## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

### CASE NO.: 1:25-cv-06490

**HONGKONG YUEQI TECH LIMITED**,

     Plaintiff,

**v.**

**THE INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,**

     Defendants.

_____/

### DECLARATION OF DAVID P. REINER

I, David P. Reiner, II, declare and state as follows:

1.     I am an attorney at law, duly admitted to practice before the Courts of the State of Illinois and the United States District Court for the Northern District of Illinois. I am one of the attorneys for HONGKONG YUEQI TECH LIMITED ("HYTL" or "Plaintiff"). Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as witness, I could and would competently testify as follows:

2.     Since and pursuant to entry of the TRO, Plaintiff has contacted Amazon, Walmart, TikTok, Etsy, Ebay, Aliexpress, and Independent Websites (Shopify, Stripe, and Paypal) to restrain the Defendant Internet Stores. As of this filing, Paypal has yet to respond and Tiktok's agent is refusing to comply because the Schedule A attached to the TRO did not specify "Tiktok Inc.".

3.     Attached hereto is a true and correct copy of the unpublished decision cited in Plaintiffs' Memorandum in Support of Motion for Entry of a Preliminary Injunction.

I declare under penalty of perjury that the foregoing is true and correct.

**DATED:  August 27, 2025**

**DAVID P. REINER, II, ESQ.**; FBN 416400

Case: 1:25-cv-06490 Document #: 17-2 Filed: 08/27/25 Page 3 of 5 PageID #:610

Charter National Bank and Trust v. Charter One Financial, Inc., Not Reported in...

2001 WL 527404

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.

CHARTER NATIONAL BANK AND TRUST, Plaintiff,

v.

CHARTER ONE FINANCIAL, INC., Charter One Bank,
FSB and St. Paul Federal Bank for Savings, Defendants.

No. 01 C 0905.
|
May 15, 2001.

*MEMORANDUM, OPINION AND ORDER*

ANDERSEN, J.

**\*1** This case is before the Court on the Motion for a Temporary Restraining Order brought by plaintiff Charter National Bank and Trust. Charter National seeks to restrain Charter One Financial, Inc ., Charter One Bank, FSB and St. Paul Federal Bank for Savings from operating any location in the Chicago metropolitan area using the mark "charter." For the following reasons, Charter National's motion is granted in part and denied in part.

*ALLEGED FACTS*

Northwest Bankcorp acquired a bank in Hanover Park and renamed it Charter Bank and Trust of Illinois on October 1, 1987. In 1993, two more locations were added, one in Schaumburg and one in Hoffman Estates. Charter Bank and Trust of Illinois changed its name to Charter Bank and Trust, N.A. and then to Charter National Bank and Trust ("Charter National"). Since 1987, the entity now known as Charter National has continuously operated the Hanover Park facility and has displayed a large sign out front with the words "Charter Bank". Since 1993, the Hoffman Estates and Schaumburg branches have displayed large signs with the words "Charter Bank".

Charter One did not do business in the State of Illinois until it acquired St. Paul Federal Bank for Savings in 1999. Until January of 2001 it operated St. Paul's fifty-eight Chicago metropolitan locations under the trade name and trademark "St. Paul". In January of 2001, St. Paul announced that it was

changing its name to Charter One Bank. On February 6, 2001, counsel for Charter National faxed a letter to Charter One informing Charter One of its contention that Charter National was the senior common law user in Chicago and that the name change was already causing customer confusion.

After Charter One did not stop converting branches from the mark "St. Paul" to "Charter One", Charter National filed the instant lawsuit. The issues have been extensively briefed and we have conducted an evidentiary hearing. While this court has reviewed the motion for a temporary restraining order, defendants have agreed to refrain from displaying the name "Charter One" in the geographic area surrounding Charter National's three branches.

*DISCUSSION*

The purpose of preliminary injunctive relief is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Platinum Home Mortgage Corp. v. Platinum Financial Group Inc.,* 149 F.3d 722, 726 (7th Cir.1998). The standards for a temporary restraining order and the standards for a preliminary injunction are identical. *Atkins v. Arson Pirie Scott & Co., Inc.,* 1999 WL 1249342 at \*1 (N.D.Ill.Dec. 13, 1999). Therefore, a TRO is warranted if the party seeking the injunction can make a threshold showing that: (1) the case has a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm if the injunction is not granted; (4) the balance of hardships is in favor of the moving party; and (5) the preliminary injunction will not harm the public interest. *Rust Environment & Infrastructure, Inc. v. Teunissen,* 131 F.3d 1210, 1213 (7th Cir.1997).

**\*2** "Trademark law aims to aid consumers in identifying the source of goods by allowing producers the exclusive right to particular identifying words or symbols which they may attach to their products as a designator of source." *Thomas & Betts Corp. v. Panduit Corp.,* 65 F.3d 654, 657 (7th Cir.1995).

Charter National has shown a reasonable likelihood of success on the merits. In order to show a reasonable likelihood of success on the merits in a trademark infringement claim, the plaintiff must demonstrate: (1) the validity of its trademark and (2) the infringement of that mark. *Echo Travel, Inc. v. Travel Associates, Inc.,* 870 F.2d 1264, 1266 (7th Cir.1989). The validity of a mark is established by showing that a "word, term, name, symbol or device" is entitled to protection

Case: 1:25-cv-06490 Document #: 17-2 Filed: 08/27/25 Page 4 of 5 PageID #:611

Charter National Bank and Trust v. Charter One Financial, Inc., Not Reported in...

because that mark specifically identifies and distinguished one company's goods from those of its competitors. *Platinum,* 149 F.3d at 726. Charter National is the senior user of the mark in the Chicago metropolitan area. Although Charter One has registered its mark at the U.S. Patent and Trademark Office, that trademark only allows it to use its mark if no other senior user, who has been continuously using the mark, has priority. 15 U.S.C. § 1065. A trademark application is always subject to previously established common law rights of another party. The *Money Store v. Harriscorp Fin.,* 689 F.2d 666, 672 (7.[th] Cir.1982). Therefore, if "Charter National Bank" is protectable under common law trademark law, Charter National has a reasonable likelihood of success on the merits.

Charter National contends that its mark is protectable because the term "charter" is more than a generic term, such as bank. Charter One argues that the mark is not protectable because it simply signifies that the bank has been certified, or chartered, by the state or federal government. We disagree. "Charter National Bank" is entitled to protection.

The determination of whether a party has established a protectable right in a trademark is made on a case by case basis, considering the totality of the circumstances. *New West Corp. v. NYM Co. of Cal., Inc.,* 595 F.2d 1194, 1200 (9th Cir.1979). A party may acquire a protectable right simply through the use of the mark in connection with goods or services. *Zazu Designs v. L'Oreal,* S.A., 979 F.2d 499, 503 (7th Cir.1992). We find that Charter National has shown a reasonable likelihood of success in its claim to have acquired a protectable right in "Charter National" through its evidentiary submissions of advertising brochures, ads, and pictures of signs, as well as its evidence of actual confusion. Later in the course of this case, Charter National will have to present more substantial evidence of confusion, but at this point the evidence it has presented is sufficient to convince this court that there is a reasonable likelihood of success in showing that its name has acquired a secondary meaning in the minds of customers and, therefore, deserves protection.

**\*3** In a trademark infringement case, damages are by "their very nature irreparable and not susceptible of adequate measurement for remedy at law." *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir.1988). Charter National has shown a reasonable likelihood of success on the merits because of customer confusion and frustration. Furthermore, the fact that it is

virtually impossible to calculate the financial impact of these damages shows that there is no adequate remedy at law.

Balancing of the hardships and the public's interest presents the closest question here. Defendants operate over seventy locations in the entire Chicago metropolitan region and forcing them to cover all of their signs on all banks is a hardship. However, they knew of this potential conflict before they changed the names of their banking operations from St. Paul to Charter One.

We have considered different geographical parameters for a temporary restraining order. Eighty percent of Charter National's deposit customers are clustered within three miles around its branches. Therefore, we have entertained the option of structuring a TRO to include that geographic area. In response, Charter National argued that it makes a profit only by virtue of the loans that it makes and, since its loan customers live in a much broader geographic area than its deposit customers, its damages will not be redressed unless we totally enjoin Charter One from any use of the mark "charter" in the entire Chicago metropolitan area. In the event that we determine that a preliminary injunction is justified, we might require that Charter One stop using the mark "charter" in the entire Chicago metropolitan area. However, given the balancing of the hardships at this stage in the litigation and the inconvenience to Charter One's hundreds of thousands of customers in the Chicago area, we will not order Charter One to stop using the mark "charter" in the entire metropolitan area.

We have fashioned a remedy which balances the public interests and the hardships, but still recognizes Charter National's likelihood of succeeding on the ultimate merits. We will restrain Charter One entities from operating any type of bank facility using the word "charter" on any outdoor sign within the geographic area between Lake Cook Road, on the north, I 290/I355/Illinois 53, on the east, North Avenue, on the south, and the Fox River, on the west. Furthermore, we will enjoin Charter One from opening any new locations, in the above geographic area, which use the mark "charter" in any way or is identified as "Charter One". This solution balances the strength of Charter National's mark in a smaller geographic area against the hardship of Charter One changing all of the signs on all of its facilities in the Chicago area on a temporary basis.

Charter National Bank and Trust v. Charter One Financial, Inc., Not Reported in...

*CONCLUSION*

Charter National Bank & Trust's motion for a temporary restraining order is granted in part and denied in part. Charter One Financial, Inc., Charter One Bank, FSB and St. Paul Federal Bank for Savings are enjoined from operating any type of bank facility using the word "charter" on any outdoor signs within the geographic area between Lake Cook Road, on the north, I 290/I355/Illinois 53, on the east, North Avenue, on the south, and the Fox River, on the west. Furthermore, Charter One is enjoined from opening any new locations in that geographic area that use the mark "charter" in any way or is identified as "Charter One". Charter National's request for a temporary restraining order prohibiting Charter One from using the mark "charter" throughout the entire Chicago metropolitan area is denied.

**\*4** It is so ordered.

**All Citations**

Not Reported in F.Supp.2d, 2001 WL 527404

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.